MILLIE GAUDET *vs.* BRAM STANSFIELD & another.

Essex.   November 5, 1902. — January 8, 1903.

Present: MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Negligence,* Employer's liability.

*Semble,* that a girl of average intelligence nineteen years of age injured by having her fingers caught by a revolving roll while operating a steam mangle, who testifies that she saw the sheets that she was putting through the mangle caught by the roll, and did not know of anything that would prevent her fingers from being caught in the same way, and who also testifies that although she knew there were rolls she did not know they would catch her fingers, is chargeable with knowledge of the danger.

The proprietor of a steam laundry need not instruct a girl of average intelligence nineteen years of age, that her fingers will get caught between the steam chest and the revolving roll of a steam mangle if she puts them where she sees the roll catch and draw in the sheets and clothing that she is passing through the machine.

TORT, at common law, for personal injuries while in the employ of the defendants.   Writ dated October 7, 1899.

In the Superior Court *Pierce,* J. ordered a verdict for the defendants ; and the plaintiff alleged exceptions.

*H. J. Cole,* for the plaintiff.

*W. Coulson,* for the defendants.

LATHROP, J.   At the time of the accident, the defendants were the proprietors of a steam laundry.   The plaintiff was over nineteen years of age, had been in the employ of the defendants about ten weeks, and had worked on a mangle about three weeks.   This machine was about four feet high, and consisted of a steam chest which rested on the floor, and was about seven or eight feet long and about two feet high.   Upon the steam chest was a roll of the same length and about two and a quarter feet in diameter.   This roll was covered with felt, canvas and linen, and revolved three or four times a minute.   By moving a lever, the distance between the steam chest and the roll could be regulated.   In front of the machine was a wooden apron, on the edge of which was a brass rail called a guide. From the top of the guide to the steam chest was two or three

inches, and from the guide to the roll was about two inches. The mangle was used to iron clothes. The steam chest was full of steam, and was extremely hot. In using the machine, the operator stood in front of it, and passed the clothes over the brass guide. They were then caught between the roll and the steam chest, and the moisture was dried out of them. The machine was not boxed in, and all the parts of it could be seen.

The plaintiff came from New Brunswick, and spoke French. She testified that she could not speak English when she went to work in the laundry, but understood it somewhat. For three weeks before the accident she had worked on the mangle, at first with the first named defendant, who, as one of her witnesses testified, taught her personally. This witness also worked at times on the mangle with the plaintiff. At the time of the accident the plaintiff was working alone. She gave this account of how the accident happened: "I was ironing sheets on the mangle at the time I was hurt. There was a wrinkle in the sheet. I took my right hand to try to smooth it. The first thing I knew my left hand was between the roll and the sheet, and my hand was drawn into the mangle." She further testified that she pushed the sheet with her left hand; that she did not know how her left hand happened to get in between the roll and the brass piece; that she was watching her right hand taking out the wrinkles, and was not looking at her left hand, and the next thing she knew her hand was up between the roll and the brass guide. The only other witness to the accident was a Mrs. Reed, called by the plaintiff. She was in the employ of the defendants at the time of the accident, but had left their employ before the trial. She testified that she was coming into the room, and the plaintiff was putting a sheet through the mangle, smoothing it down with her right hand; that the plaintiff looked up as she came in, and smiled, and in an instant she was crying for help; that she saw the witness come into the room and turned and smiled; that she turned her eyes away from her work; and that her right hand was smoothing out wrinkles, and the next thing she knew the plaintiff's left hand was in the machine. This witness testified after the plaintiff had given her testimony, but the plaintiff was not again put on the stand to contradict her.

Mass.]   GAUDET *v.* STANSFIELD.   453

If the testimony of Mrs. Reed is to be taken as true, and it is uncontradicted, the accident was not caused by any want of instructions, but by the inattention of the plaintiff to her work, for which the defendant is not responsible. *Cheney* v. *Middlesex Co.* 161 Mass. 296, and cases cited. *Wilson* v. *Massachusetts Cotton Mills,* 169 Mass. 67.

The same result is reached in another way. The declaration alleges that the plaintiff's mental capacity and intelligence was below the average of other girls of her age, which the defendants ought to have known from her appearance. It also alleges want of instructions. We find nothing in the evidence to show that there was anything in the appearance of the girl indicating that she was not of average intelligence or was wanting in mental capacity. Her aunt, who took her to the defendants, testified that she told one of them that the plaintiff " was not very smart like some girls to learn and quick to learn." The husband of the last witness testified that, after the accident, one of the defendants told him that "he had lots of trouble with the girl; that she was very stupid and slow to learn." These conversations were denied, but assuming them to be true, they fall far short of what is alleged. The plaintiff herself testified that when she was told how to do things she went ahead and did them all right. We see nothing in her testimony to show that she was not of average intelligence. On the other hand it seems to us that the contrary appears. That she did her work well is shown by the fact, as she testified, that the first week she received three dollars, then she got four, and finally five and a half dollars a week.

If the plaintiff was of average intelligence, the danger of having her hands drawn into the roll, if she put them outside of the brass guide, was an obvious one, of which no warning was necessary. The plaintiff herself testified that she saw the sheets caught by the roll, and did not know anything to prevent her fingers from being caught just the same as the sheets.

While the plaintiff in this case testified that although she knew there were rolls there she did not know they would catch her fingers, it would seem that she was chargeable with such knowledge. *Lowcock* v. *Franklin Paper Co.* 169 Mass. 313. However this may be, and whatever force her testimony may

have upon the question of due care on her part, it can have no bearing upon the question of negligence on the part of the defendants. A master has a right to assume, in the absence of anything to show the contrary, that a person of the age of the one injured in this case knows those facts of common experience, with which ordinary persons of her age and appearance are familiar. As was said by Mr. Justice Knowlton in *Ciriack* v. *Merchants' Woollen Co.* 151 Mass. 152, 156 : "In hiring a boy twelve years of age and apparently of average intelligence, an employer is not called upon to tell him that, if he holds his hand in fire, it will be burned, or strikes it with a sharp instrument, it will be cut, or thrusts it between the teeth of revolving cog-wheels in the gearing of a mill, it will be crushed." See also *S. C.* 146 Mass. 182.

There is no evidence in this case to warrant a finding that the defendants, or either of them, believed or had reason to believe that the plaintiff was in ignorance of the danger of getting her hand caught by the revolving roll, or that she needed to be warned of her danger. *Leistritz* v. *American Zylonite Co.* 154 Mass. 382. *Richstain* v. *Washington Mills,* 157 Mass. 538. *Connolly* v. *Eldredge,* 160 Mass. 566, a case very similar to the one before us. *Ruchinsky* v. *French,* 168 Mass. 68. *Wilson* v. *Massachusetts Cotton Mills,* 169 Mass. 67, 71. *Lemoine* v. *Aldrich,* 177 Mass. 89. *Silvia* v. *Sagamore Manuf. Co.* 177 Mass. 476.

*Exceptions overruled.*